# DUFFY, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, February 2, 1904.

1. **CARRIERS OF PASSENGERS: Duty of Carrier: Injuries While Alighting from a Car: Pleading and Proof.** In an action by a passenger for injuries received while alighting from a street car, the petition alleged that the defendant's servants, after the car had been stopped, caused it to suddenly start forward while he was proceeding to alight, whereby he was thrown and dragged, producing the injuries complained of. The evidence showed that the plaintiff indicated to the conductor his desire to get off, and, in obedience to the conductor's signal, the motorman slowed down the car, but could not bring it to a full stop on account of defective brakes, and the plaintiff, after the car had run past the stopping place and was going at the speed of an ordinary walk, undertook to get off, when the speed was suddenly accelerated whereby he was thrown and injured. *Held*, the evidence tended to prove the negligence alleged in the petition, that it was not the defective brakes, but the act of the motorman causing the car to start forward, which caused the accident. *Held*, further, the plaintiff was not bound to show that the defendant's servants knew his position when the speed was accelerated, since the conductor saw him leave his seat for the purpose of getting off the car; it was the duty of the conductor and motorman to hold the car for a reasonable length of time for plaintiff to get off in safety. (Per **Bland, P. J.**)

2. **PERSONAL INJURIES: Elements of Damages: Future Pain and Loss of Earnings.** Where the evidence showed that the plaintiff's ankle was broken and was and would remain weaker than the other one, an instruction that the jury might consider future pain and anguish, and loss of earnings, is held by a majority of the court to have been no error, although plaintiff was at the time of the trial doing the same work and receiving the same wages as before the injury. (**Bland, P. J.**, dissenting.)

3. ———: **Contributory Negligence: Pleading.** Where defendant did not plead contributory negligence in defense, an instruction to the jury that there was no issue that the injury sustained by the plaintiff was caused by his own negligence in getting off the car, was not a reversible error. (**Bland, P. J.**, dissenting.)

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Crawley, Jamison & Collet* for appellant.

(1)   Under the pleadings and evidence in this case plaintiff was not entitled to recover, and the trial court should have so declared to the jury by peremptory instruction as requested by defendant.   At the end of the trial the cause of action alleged in plaintiff's petition remained unproven in its entire scope and meaning.  As to the necessity of pleading and proving that the jerk in such cases was unnecessarily or unusually violent, see Saxton v. Railroad, 72 S. W. 720; Pryor v. Railroad, 85 Mo. App. 367; Bartley v. Railroad, 148 Mo. 124;  (2) As to the necessity of proving that defendant's servants either knew or by the exercise of care might have known of plaintiff's situation at the time he fell, see Strauss v. Railroad, 75 Mo. 185; Cullar v. Railroad, 84 Mo. App. 340.   (3)  It was error for the court to authorize a recovery for a future pain and future loss of earnings without evidence upon which to base it.   Duke v. Railroad, 99 Mo. 347; Barr v. City, 105 Mo. 550; Mellor v. Railroad, 105 Mo. 450; Nixon v. Railroad, 141 Mo. 425; Cobb v. Railroad, 149 Mo. 609; Robertson v. Railroad, 152 Mo. 383; Evans v. City, 76 Mo. App. 20; Madison v. Railroad, 60 Mo. App. 599; O'Brien v. Loomis, 43 Mo. App. 29; Mammerberg v. Railroad, 62 Mo. App. 563.

BLAND, P. J.—After alleging that plaintiff was a passenger on one of defendant's street railway cars and the contract to carry him to his place of destination, (Clara and Easton avenues, in the city of St. Louis) and

the duty to stop the car a reasonable length of time to let plaintiff off, the petition proceeds as follows:

"Yet the plaintiff avers that the defendant, unmindful of its said undertaking and of its duty in the premises, did by its servants in charge of its said car, carry the plaintiff past his said point of destination, and thereafter, to-wit: As said car was approaching the intersection of Easton and Goodfellow avenues, at the request of plaintiff, did slow down said car until it was stopped or moving very slowly at or near said Goodfellow avenue and Easton avenue in the city of St. Louis, and invited the plaintiff to alight from said car whilst so stopped or slowed down.

"That the plaintiff in obedience to such invitation to alight from said car whilst so stopped or slowed down, proceeded to the platform and step of said car to alight therefrom, and was proceeding to alight from said car, and whilst he was in the act of doing so, and before he had a reasonable time or opportunity to do so, defendant's servants in charge of its said car negligently caused and suffered said car to be started forward, whereby the plaintiff was thrown from said car to the street and dragged and greatly and permanently injured upon his body and legs and internally, sustaining a fracture of the bones of his right foot and ankle and bruises upon his body and arms and his leg and knee."

Plaintiff testified that he was a passenger on one of defendant's Easton avenue cars and that his destination was Clara and Easton avenues. He further testified as follows:

"Q. Why was it that you did not get off at Clara that night? A. Through a mistake of mine.

"Q. Through a mistake of what? A. My own mistake.

"Q. Now, after you passed Clara, and ascertained that you had passed Clara, tell the jury what you did to indicate that you wanted to get off the car and where?

A.  I got off the car at Goodfellow avenue; about twenty-five yards west of Goodfellow avenue, when we went by this side of Rinkle's Grove.  That is how I seen I was too far ahead.

"Q.  When you found out you had passed your point of destination, tell the jury what you did?  Tell the jury what you did to indicate to the motorman or conductor you wanted to get off the car?  A.  When I seen this I shoved down to ring the bell for the car to stop at Goodfellow avenue.  He was in the front part of the car, standing sidewise, some transfers in his hand counting them.  He changed the transfers to one hand from the other, put up his left hand to the bell; as he did that I walked out, the car was going below speed as it approached; I stepped out and fell.  There was not out there any houses the south side until you get to Blackstone avenue, the nearest building.  A few houses on the north side.

"Q.  When you walked out what did the car do towards slowing down or stopping?  A.  She slowed down until about twenty-five yards, maybe thirty, a little less, or more, west of Goodfellow avenue.

"Q.  Did it come to a full stop?  A.  No, sir; it did not.

"Q.  How was it moving, how slow, at the time you got on the step as you were about to step off?  A.  About an ordinary walk would keep up with it.

"Q.  An ordinary walk?  A.  About an ordinary walk.

"Q.  When you stepped off the car, tell the jury what occurred; what did the car do?  A.  Well, in some way, I believe that the brake didn't work on the car; he started the car too sudden on me.  I had my foot up as the car slowed up, I was preparing the other foot to get it up, ready to get off the car.  The car started off in that position.  I had hold of the handrail with my left hand; I made a grab with my right hand to catch the rail, missed it and it turned me out on the street, dragged

four paces, maybe five paces.

"Q. When you say the car started up how did it start, fast or slow? A. Started with a jerk, started with a jerk, fast, started with a twist, turning on a twisting sensation.

"Q. What did the car do after it threw you off; did it go on? A. Went ahead.

"Q. Did it stop at all? A. No, sir; no, sir; it did not.

"Q. Now, how were you holding, describe that to the jury; what was your position when this jerk of the car took place, and the car went on? A. Standing up like this (indicating); I had my foot there ready to get off the car this way (indicating), hold of the left rail with my left hand.

"Q. When this jerk came what effect did it have on you, explain to the jury; did you remain on the step or were you thrown off the step? A. I was forced off.

"Q. Did you fall a clean fall or were you dragged? A. I was dragged about four paces; the second time that it jerked the car jerked clean away from me; turned me over in the street."

He admitted that the car passed Clara avenue without stopping, through his mistake in failing to give a signal for it to stop. His testimony shows that he attempted to get off after the car had passed Goodfellow avenue, from twenty-five to thirty yards, and that it was running at a speed of about on ordinary walk for a man; that the accident happened at night. He nowhere stated that the signal was given by him to stop the car at any other point than at Goodfellow avenue, and does not state as a matter of fact, that any signal was given for the car to stop at Goodfellow avenue, however, it is inferable from his testimony that after he pressed the electric button, the conductor gave the motorman the signal to stop before reaching Goodfellow avenue. There is no evidence that the bell was given

for the motorman to go ahead, after reaching Goodfellow avenue. The plaintiff said he believed the brake did not work, and that the car was started too suddenly on him by the motorman. On this evidence, it is insisted by defendant that plaintiff's own evidence shows that there was no negligence on the part of defendant's servants that contributed to plaintiff's injury, and that its instruction for a compulsory nonsuit should have been given. On the question of whether or not there should have been a compulsory nonsuit, the evidence should be considered in its most favorable aspect for the plaintiff. Considering all of it that bears upon the accident, about this state of facts is shown to exist: Plaintiff, without noticing, let the car pass Clara avenue and then gave the usual warning of his desire to get off at the next street (Goodfellow avenue). The usual signal was given by the conductor to the motorman to stop at Goodfellow avenue and in obedience to this signal, the motorman tried to stop the car and slowed it down, but it did not come to a full stop, on account of the failure of the brakes to work properly, and when plaintiff reached the rear platform, he discovered the car had passed the stopping place from twenty-five to thirty yards, but was still slowed down to a speed of an ordinary walk, and he undertook to get off, but before he could alight from the car, its speed was suddenly accelerated whereby he was thrown off and injured. The negligence shown by this evidence to have caused the injury was not that the car was caused to lurch forward or on account of the defective brake, but that it was suddenly started forward by the motorman, while the plaintiff was in the act of alighting from it, and tends to prove the negligence alleged in the petition.

The contention that plaintiff was bound to show that the defendant's servants knew of his position when the speed of the car was accelerated, is answered by the evidence that plaintiff was a passenger; that he had given the usual signal of his wish to get off the car, and

that the conductor, in recognition of that signal, had signalled the car to stop and saw plaintiff leave his seat and go to the rear platform for the purpose of getting off. In these circumstances, it was the duty of the conductor and motorman to hold the car still for a reasonable length of time to allow the plaintiff to get off in safety.

On the measure of damages, the court gave the following instruction:

"If the jury find for the plaintiff they should assess his damages at such sum as they may believe from the evidence will be a fair compensation to him.

"1. For any pain of body or mind which the jury believe from the evidence he has suffered and will suffer by reason of said injuries and directly caused thereby.

"2d. For any loss of the earnings of his labor which the jury believe from the evidence he has sustained and will sustain by reason of his injuries and directly caused thereby.

"3d. For any expenses necessarily incurred for medical and surgical attention which the jury believe from the evidence he has sustained directly caused by said injuries."

Plaintiff's evidence shows that the injury to the ankle (broken bone) had healed; that the ankle would remain for some time weaker than the other one, but there is no evidence that it will cause any severe pain or mental suffering in the future. The evidence further shows that plaintiff, at the time of the trial, and for several months prior thereto, had done and was doing the same work and was receiving the same wages as before the injury. There is, therefore, no evidence that he will suffer future pain of body or mind, or future loss in his earnings on account of the injury. He is entitled to compensation for any future or permanent impairment of the strength and use of his ankle, but not

for any loss of future earnings, as the evidence shows he is earning the same wages he earned before the injury and is doing exactly the same work.

The court gave the following instruction for plaintiff:

"The court instructs the jury that there is no issue in this case that the injury, if any, sustained by the plaintiff was caused by his own negligence in getting off a car of the defendant."

There was no plea of contributory negligence, and hence no occasion for the giving of this instruction. Vogeli v. Marble & Granite Co., 49 Mo. App. 643; Taylor v. Railway, 26 Mo. App. 336; Hughes v. Railway, 127 Mo. 447.

For error in giving these instructions, I think the judgment should be reversed and the cause remanded; but Judges *Reyburn* and *Goode* are of the opinion that the evidence tends to prove that plaintiff will suffer future pain and mental anguish from the injury and that his earning capacity has been permanently impaired, that the damages are moderate and the judgment should be affirmed.   The judgment is accordingly affirmed.