GEORGE C. YOUNG, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 5, 1905.

1. PASSENGER CARRIERS: Freight Train: Unusual Jerk. Where passengers on a freight train have been directed to alight, and while attempting to do so, there is an unusual jerk of the caboose resulting in injury, the carrier is liable.

2. ————: Personal Injury: Evidence: Jury Question. The evidence relating to an injury to a passenger's leg and his hearing while riding on a freight train is considered sufficient to send these questions to the jury.

3. ————: ————: Burden of Proof: Jury Question. Where an injury may have resulted from one of two causes, for one of which and not the other the carrier is liable, the passenger must show with reasonable certainty that the carrier caused the injury of which he complains, and if the evidence leaves the matter to conjecture he cannot recover.

Appeal from Johnson Circuit Court.—*Hon. Wm. L. Jarrott*, Judge.

REVERSED AND REMANDED.

*R. T. Railey* for appellant.

(1) The plaintiff failed to show that defendant was guilty of any negligence, and for that reason our demurrer to the evidence should have. been sustained. Saxton v. Railway, 98 Mo. App. 503-4; Erwin v. Railway, 94 Mo. App. 296-7; Young v. Railway, 93 Mo. App. 275; Shields v. Railway, 87 Mo. App. 646; Pryor v. Railway, 85 Mo. App. 367; Holt v. Railway, 84 Mo. App. 446; Guffey v. Railway, 53 Mo. App. 468; Wait v. Railway, 165 Mo. 621; Bartley v. Railway, 148 Mo. 140; Hite v. Railway, 130 Mo. 132; Railway v. Morris (Ky.), 62 S. W. 1013. (2) When the injury complained of may have resulted from either of two causes, for one of which the party sued is liable and the other he is not, it is for the plaintiff to show with reasonable certainty that the cause for which the party is liable produced the result. Smart v. Kansas City, 91 Mo. App. 592; Bank v. Railway, 98 Mo. App. 330; Warner v. Railway, 178 Mo. 125, 77 S. W. 69, 70; Oglesby v. Railway, 177 Mo. 272, 76 S. W. 629; Epperson v. Railway, 155 Mo. 382; Cotton v. Wood, 8 C. B. (N. S.) 571; Perkins v. Railway, 103 Mo. 52; Glick v. Railway, 57 Mo. App. 105; Peck v. Railway, 31 Mo. App. 125; Peffer v. Railway, 98 Mo. App. 292; Baulec v. Railway, 59 N. Y. 366; Railway v. Schertle, 97 Pa. St. 450; Duncan v. Tel. Co. (Wis.), 58 N. W. 75; Megow v. Railway (Wis.), 56 N. W. 1099; Orth v. Railway (Minn.), 50 N. W. 364; Wintuska's Adm. v. Railway (Ky.), 20 S. W. 820.

*S. G. Kelly* and *O. L. Houts* for respondent.

(1) Plaintiff has, in this case, followed the decision of this court in Jones v. the Missouri Pacific Railway Company. That case is on all fours with, and decisive of, the case at bar. Jones v. Railway, 31 Mo. App. 614; Becker v. Real Est. & Bldg. Co., 174 Mo. 246; Fullerton v. Railway, 84 Mo. App. 498; Magee v. Railroad Co., 92 Mo. 208.

ELLISON, J.—Plaintiff shipped cattle over defendant's road and accompanied them himself, he having been furnished by defendant with what is known as a stock pass. He was riding in the caboose and on arriving at St. Louis as he was leaving the car a sudden movement of the train threw him to the floor and caused two other stockmen to fall upon him. He brought this action for the injuries received and recovered judgment in the trial court. He complains principally of three injuries as the result of his fall: one to his leg, another to his hearing, and another that he was ruptured.

The defendant for reversal of the judgment relies, first, on the refusal of its demurrer to the evidence. In considering that point we find that the evidence in plaintiff's behalf tended to show that on arriving at St. Louis the conductor passed along the aisle of the car as the train was moving slowly and cried out, "St. Louis, get out, get out!" That the train then stopped and plaintiff started out with two men immediately in front of him, when the train "made a heave forward." Plaintiff said that he was never on a train (and he was an old shipper) "that made such a heave as that made." His feet flew from under him and he fell upon the floor with the two men on top of him, the heaviest one across his leg. He described his fall, on cross-examination, in this way: that as he was starting out, "well, just at that time you never seen such a swoop as the old caboose made. It made a jump and it looked to me like it jumped clear off the track. Well, now, I just come right back. These two men, one would weigh 180 or more pounds and the other was a 160 pound man. . . . My heels went right out from under. I fell flat on my back. I just seen stars. You talk about jerks; I have shipped 100 car loads of cattle and hogs. I have shipped to St. Louis time and again and to Kansas City time and again, and I never was on a train that made such a jerk."

The plaintiff's testimony was corroborated by two or more other witnesses. It is quite true that when one rides on a freight train he ought to expect that it will be handled and manipulated in a rougher and more uncomfortable way than would a passenger train; and that it is necessary that he should be more guarded in avoiding injury. But there may be negligence in the movement and handling of such trains which, resulting in injury, will render the owner liable to a passenger. Here, an invitation or direction had been given for passengers to get off the car and it had come to a stop, when, as plaintiff was moving out, defendant's servants, without any warning, moved the train with such force and suddenness as to send the car forward with a greater jump, or jerk, than witness had ever known in years of experience. There can be no doubt of defendant's liability to plaintiff for whatever injuries resulted from such act; and it is manifest that the court properly refused the demurrer. [Jones v. Railroad, 31 Mo. App. 614, a case much like the present. See, also, Duffy v. Transit Co., 104 Mo. App. 235; Becker v. Lincoln Bldg. Co., 174 Mo. 246; Straus v. Railway, 75 Mo. 185; McGee v. Railway, 92 Mo. 218; Hurt v. Railway, 94 Mo. 255.]

There was much evidence tending to show that the condition of plaintiff's leg and his rupture was caused by matters prior to his fall in the car. There was evidence tending to show that plaintiff for years had been afflicted with rheumatism which had affected his leg, and that the injury thereto was solely attributable to that disease. But an examination of the record has convinced us that the state of the evidence was such as to amply justify the trial court in leaving it for the jury to say whether the injury to the leg resulted from the fall in the car. Besides, plaintiff, as to this branch of the case—was cautious enough to have the jury informed in his instruction number four that he was entitled to recover for whatever natural and necessary injuries that

resulted from the fall, even though he had been afflicted with rheumatism.

So, also, we think the court was justified in refusing to take from the jury the question as to plaintiff's injured ear and consequent defective hearing.

But as to the rupture, we are of the opinion that the evidence was such as to leave an answer to the question whether plaintiff's condition in that respect was due to his fall in the car so uncertain and so much a matter of mere conjecture, that that branch of the case should have been withdrawn from the jury's consideration, as requested by defendant. The law is that the plaintiff, of course, must make out his case, and, therefore, "if the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in his action." [Warner v. Railway, 178 Mo. 125; Smart v. Kansas City, 91 Mo. App. 586.] In the former case the supreme court applied the rule to a railway accident where it could not be said whether the plaintiff was injured by being thrown from his vehicle before the car reached him, or that the car struck the vehicle and threw him out. In the latter, we applied the rule to an alleged injury caused by falling upon one of the streets of Kansas City, where it could not be said that an amputation of the leg was made necessary as a result of the fall, or a former diseased condition. See also Wilbur v. Railway, 85 S. W. Rep. 671, 110 Mo. App. 689.

The evidence shows that plaintiff was ruptured by lifting at a "log rolling" when he was sixteen years old. That it made a protuberance the size of a walnut or the end of his thumb, on his groin. That he was never cured of it. That on the day before he went with his cattle on defendant's train (July 10) he, with two others, pitched

forty acres of wheat in a little more than half a day. When asked by defendant's counsel, plaintiff answered, "that about the only injury" he complained of as a result of the accident was to his right leg and right ear. After a few more questions plaintiff's counsel reminded him that he had not mentioned his rupture in answering defendant's counsel, and asked: "Now, what about the rupture on your right side, what caused that?" The witness answered: "Well, I couldn't swear—I couldn't swear what done it, but after that man fell on me—(his counsel here interrupted with the question, it was never there before?" Answer, "No, sir." His physician, a witness in his behalf, stated that he noticed the two ruptures in or just above the groin, one on each side. When asked by plaintiff's counsel, "what would have produced these ruptures?" he answered that, they were "caused from violence or lifting." Again, he said, in answer to defendant's counsel, that "a strain or violence" would cause the rupture. That it could come from pitching hay or wheat. Again, in answer to plaintiff's counsel as to "what would be the probable effect of a man pitching wheat, that was used to pitching wheat? Would it produce a rupture?" The doctor answered that "that would depend on whether he had pitched one bundle or two or three. He could pitch enough to make a pretty heavy load, I don't know." It is quite true that at some portions of plaintiff's testimony in his own behalf he made use of language which would indicate that one of his ruptures came from his fall. For instance, he stated that the man falling on him "bursted a striffin;" but it is apparent from his whole evidence that such was merely his opinion at times, in thinking of what caused the additional rupture. For he never thought of a rupture until two or three weeks afterwards.

Since the jury was allowed to consider that branch of the case, we cannot say how much such consideration

may have augmented the verdict. It therefore becomes necessary to reverse the judgment and remand the cause. All concur.