[Civil No. 2582. Filed April 2, 1928.]

[265 Pac. 757.]

JOEL I. BUTLER, Appellant, v. LUCY V. RULE, Administratrix of the Estate of LUCILLE HOLLOWAY, Deceased, Appellee.

Messrs. Curley & Pattee, for Appellant.

Messrs. Richey & Richey and Mr. Elwood B. Frawley, for Appellee.

ROSS, C. J.—After the decision reported as *Butler* v. *Rule*, 29 Ariz. 405, 242 Pac. 436, this action was tried to a jury for the second time, again resulting in verdict for the plaintiff, and is now before us on assignments that present several questions, only one of which we need to consider. That question is whether the court erred in not granting defendant's request for an instructed verdict on the ground that there was no evidence to support a verdict.

In our former opinion the facts are recited quite fully and will not be again stated except to show any changes or differences. The evidence is practically the same on the question of negligence, and our ruling thereon must be the same.

From the present record, however, we are satisfied it is not shown that Mrs. Holloway's death was caused by the X-ray burn, and, whether such burn hastened her death, is left to conjecture and doubt.

That Mrs. Holloway was afflicted with sarcoma, and had been for eleven months before consulting defendant, that when she did consult him the disease was too far advanced for the surgeon's knife, and that the only hope of relieving or curing her was by the use of the X-ray, is implicit from all the evidence. The evidence is also to the effect that the lease of life of a person afflicted with sarcoma is, at most, from one and one-half to two years. Dr. Gore, testifying as an expert, said:

"Sarcomas are always fatal, with the possible exception of one occurring on a limb in any early, very early, state; the limb being amputated might possibly stop the growth. I have never known a case of sarcoma that ended any way but fatally. Sarcoma is the most rapidly growing of all cancer. . . . They all begin with a very small focus, and, when they attain a size where they can be seen and felt, they have then or are probably already not a local thing any more. I mean by that, little tiny pieces of tumor, which are impossible for you to see, get into the blood stream, and are deposited in other parts of the body. A single tiny microscopic particle will cause a new tumor in another location, any part it becomes attached or fastened to. Cancers do not cause pain in the beginning. Any time that a cancer is causing pain it is no longer a local disease; it is no longer an early case; it is no longer susceptible of operative removal with the expectation of having a cure. By far the great majority of cancer is fatal; the persons afflicted die with cancer irrespective of any kind of treatment they have, and the reason for that is that the patient does not seek medical advice, because they have no pain, and the tumor is allowed to go on until it causes inconvenience, and, when it has attained a size and an age whereby it causes inconvenience, it has ceased in the great majority of instances to be a local condition, by that we mean confined to the mass that you see. We speak of it as a generalized condition when it has gone beyond the capsule, spread in other parts of the body, where new masses will grow, and we have what we call then generalized sarcoma-

tosis or carcinomatosis, as the case may be, according to the classification of the tumor. It goes into the blood system and the same thing is true of the lymph system. It primarily spreads through the lymph system, and is carried up that way, and then enters into the blood stream.''

The witness' statement of the action and effect of sarcoma upon its victim we must accept as correct, as it is not questioned. When deceased placed her case in defendant's care, it was a desperate one. If the disease were left to run its course, according to the expert testimony, she could live no longer than a year or thirteen months at most. Two physicians, of whom she sought aid, concluded that the disease was too far developed for an operative removal, and as a last resort sent her to defendant for X-ray treatment. What was apparent to the experienced professional eye had probably never occurred to deceased, because, paraphrasing Dr. Gore, ''she had suffered no pain and therefore sought no medical aid until the tumor caused her inconvenience by reason of its size, and by that time it had ceased to be a local condition.'' The defendant, under the circumstances, could do no less than try to do something, little though it be, for, ''as long as there is life, there is hope.''

There is no question but that the burn was a serious one, due, it may have been, to an overdosage, and thereafter the disease that had been stealthily and painlessly undermining her constitution became painfully articulate in the left abdomen, leg and face. From the date of the X-ray treatment until she died, the patient suffered almost continuous intense pain in different parts of her body, but mostly in the left leg, left side of the abdomen and face. The experts testified that these pains were caused by the cancerous condition and not by the burn, and, considering the nature and malignancy of sarcoma, how can one say deceased would have suffered no pain, or less

pain, or have lived longer than she did, if there had been no burn? At the time she sought defendant's help, the tumor was some four inches long by two inches wide and an inch to an inch and a half thick, and near it nodules had appeared showing that it was beginning to spread into the blood stream and form other tumors. All the doctors, to wit, Gore, Purcell, Thomas, Huffman and Clyne, as also the defendant, testified that the swelling of the leg and abdomen, the paralysis of the left side of the face, and the pain suffered therefrom, were due to the interference of the blood circulation by these cancerous growths or tumors distributed throughout deceased's body.

In the first trial there was evidence to the effect that the ulcer caused by the X-ray contributed to the death of Mrs. Holloway. There is no evidence, however slight, in the present record, that the ulcer proximately contributed to her death. The law we think is very well settled that the burden was on the plaintiff to show, not only that the defendant was negligent, but that, by reason thereof, Mrs. Holloway's death was caused or hastened. Whether it was or not must of necessity be shown by those acquainted with the effect of such a burn and the nature of the disease being treated—men who have studied and familiarized themselves with the human body and its diseases, and who, by reason of their knowledge and experience, are able to say what results may follow from a given condition.

The ultimate conclusion of the court and jury must find a basis in the evidence, and, as is said by Circuit Judge TAFT (now Chief Justice) in *Ewing* v. *Goode* (C. C. A.), 78 Fed. 442:

"... When a case concerns the highly specialized art of treating an eye for cataract, or for the mysterious and dread disease of glaucoma, with respect to which a layman can have no knowledge at all, the

court and jury must be dependent on expert evidence."

Another court has stated:

"It is the settled rule that, where the injuries complained of are of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science and must necessarily be determined by the testimony of skilled professional persons." _ *Oklahoma Hospital* v. *Brown,* 87 Okl. 46, 208 Pac. 785.

If we adopt plaintiff's theory that, because the deceased had suffered no pain nor swelling nor paralysis until after the X-ray treatment, that therefore these evils must be charged against the treatment, we ignore all the evidence. If we presume that the ill results were the effect of the treatment, we give greater weight to the presumption than to the evidence of the expert witnesses. If the presumption and the evidence are placed against each other, still we are left in doubt as to whether the X-ray treatment or the cancerous growths was the proximate cause of death.

It is said in *Matuschka* v. *Murphy,* 173 Wis. 484, 180 N. W. 821:

"Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and that a jury can do no more than guess or conjecture as to which was in fact the efficient cause, the submission of such a choice to the jury has been consistently condemned by this court."

See, also, *Young* v. *Missouri Pac. Ry. Co.,* 113 Mo. App. 636, 88 S. W. 767; *Anton* v. *Chicago, M. & St. P. Ry. Co.,* 92 Wash. 305, 159 Pac. 115; *Strohm* v. *New York, L. E. & W. R. Co.,* 96 N. Y. 305; *Miller* v. *Director General,* 270 Pa. 330, 113 Atl. 373.

As stated above, it is left in obscurity and doubt as to whether the pain suffered by the deceased was any greater by reason of the X-ray treatment than it

would have been had no such treatment been given; but, since under the decisions of this court the personal representative suing for the benefit of the estate is entitled to recover only the pecuniary damages suffered by the estate, it is immaterial if the treatment did cause pain which the deceased otherwise would not have suffered. The trial court properly instructed the jury that no recovery could be had for mental anguish and pain. *De Amado* v. *Friedman,* 11 Ariz. 56, 89 Pac. 588; *Phoenix Ry. Co.* v. *Landis,* 13 Ariz. 80, 108 Pac. 247, rehearing 13 Ariz. 279, 112 Pac. 844, affirmed 231 U. S. 578, 58 L. Ed. 377, 34 Sup. Ct. Rep. 179; *Arizona Binghampton Copper Co.* v. *Dickson,* 22 Ariz. 163, 44 A. L. R. 881, 195 Pac. 538.

For the reason that the plaintiff has failed to sustain the burden of showing that the X-ray treatment administered by the defendant caused or hastened the death of the deceased, the judgment is reversed, and the cause remanded, with directions that the case be dismissed.

LOCKWOOD and McALISTER, JJ., concur.