733 P.2d 631

Juanita C. **GALINDO**, mother of Jose Galindo, deceased, Plaintiff/Appellant,

v.

**TMT TRANSPORT, INC.**, an Arizona corporation, and Salvatore G. Robles and Jane Doe Robles, Defendants/Appellees.

No. 2 CA–CIV 5731.

Court of Appeals of Arizona, Division 2, Department B.

Sept. 25, 1986.

Reconsideration Denied Nov. 3, 1986.

Review Denied Feb. 21, 1987.

Raineri & Raineri by Joseph C. Raineri, Sr., Scottsdale, for plaintiff/appellant.

Stinson & Douglas by Warren R. Brown, Phoenix, for defendants/appellees.

## OPINION

LACAGNINA, Judge.

Juanita C. Galindo appeals from a judgment in favor of TMT Transportation, Inc. and Salvatore G. Robles denying her damages for the wrongful death of her adult son, Jose Galindo, a pedestrian struck by a truck on Interstate 10 on January 5, 1982. She claims that the trial court erroneously refused her offered instructions advising the jury that if her son's mental condition prevented him from realizing the consequences of his acts or caring for his own safety, he was not contributorily negligent and that because of his deranged intellect, he was not contributorily negligent as a matter of law. She also argues the court erroneously submitted the issues of negligence, contributory negligence and assumption of risk to the jury with the standard approved Arizona instructions. She claims that because of her son's mental condition, his conduct is judged by a different standard of care. She also contends that because of this condition, there was insufficient evidence of his contributory negligence or assumption of risk to allow the jury to consider those issues.

We must decide whether in a negligence action a mentally deficient person is charged with an objective standard of care of a reasonable person under the circumstances or some other subjective standard which would exempt a person from tort liability and responsibility because he is mentally deficient.

We affirm the judgment of the trial court based on the jury verdict and hold that in a negligence action a mentally ill or insane person is held to the same standard of care as an ordinarily careful person under the circumstances.

## FACTS

We recite the evidence in the light most favorable to upholding the jury verdict. *Meyer v. Ricklick*, 99 Ariz. 355, 409 P.2d 280 (1966), quoting *Stallcup v. Coscarart*, 79 Ariz. 42, 45, 282 P.2d 791, 795 (1955). Jose Galindo, who was 29 years old at the time of the accident, was on leave from and returning to the Arizona State Hospital where he had been a patient on many previous occasions. He was a passenger in a van driven by his father and occupied by his mother, Juanita. He had been diagnosed and was being treated for paranoid schizophrenia.

Robles was driving a loaded gasoline haulage truck toward Phoenix on Interstate 10. When he came off an overpass entering Interstate 10, he saw the Galindo van parked on the right shoulder of the road. As he moved to the left and passed the van without incident, he saw people in the emergency lane for southbound traffic. He saw Jose run from the emergency lane across the southbound lanes and across the median and northbound lanes. He then saw Jose turn and begin running toward the parked Galindo van. He stated that Jose then suddenly turned, ran across the slow northbound traffic lane and jumped in front of his truck in a gesture described as an attempt to tackle the truck.

The investigating officer's report, admitted in evidence, stated that Jose ran across the northbound slow lane and dove with his arms apart as though he were trying to tackle the truck into the right front fender of the truck and committed suicide. Medical experts testified that in their opinion, based upon what they had been told about the accident and Jose's medical records, Jose was in a confused and irrational state at the time he was observed running erratically onto the freeway and probably was not able to recognize his behavior as being dangerous. Jose had been committed to the Arizona State Hospital as a mental patient at least seven times, three voluntary and four court-ordered. The medical witnesses testified that 90% of the people suffering from paranoid schizophrenia are functioning in society with proper treatment and follow-up and that the goal of the Arizona State Hospital is to return a patient to society as soon as possible after treatment.

## STANDARD OF CARE

Arizona recognizes only one standard of care for adults in a negligence action. That standard, as stated in Recommended Arizona Jury Instructions, Negligence Instruction 2A, approved by the Arizona Supreme Court in 1974, was the instruction given in this case. The court instructed the jury that when the conduct of both the plaintiff and defendant is in issue, "[a] person is negligent if he fails to act as an ordinarily careful person would act under the circumstances." The standard of care for both negligence and contributory negligence is the same. *McGriff v. McGriff*, 114 Ariz. 323, 560 P.2d 1230 (1977).

In an attempt to describe the reasonable person standard, Prosser and Keeton state:

The whole theory of negligence presupposes some uniform standard of behavior. Yet the infinite variety of situations which may arise makes it impossible to fix definite rules in advance for all conceivable human conduct. The utmost that can be done is to devise something in the nature of a formula, the application of which in each particular case must be left to the jury, or to the court. The standard of conduct which the com-

munity demands must be an external and objective one, rather than the individual judgment, good or bad, of the particular actor; and it must be, so far as possible, the same for all persons, since the law can have no favorites. At the same time, it must make proper allowance for the risk apparent to the actor, for his capacity to meet it, and for the circumstances under which he must act.

The courts have dealt with this very difficult problem by creating a fictitious person, who never has existed on land or sea: the 'reasonable man of ordinary prudence.'

Sometimes he is described as a reasonable person, or a person of ordinary prudence, or a person of reasonable prudence, or some other blend of reason and caution. It is evident that all such phrases are intended to mean very much the same thing.

Prosser and Keeton on The Law of Torts § 32 at 173 (W. Keeton 5th ed. 1984) (footnotes omitted). To the same effect is Restatement (Second) of Torts where the standard is stated as follows:

Unless the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable man under like circumstances.

Restatement (Second) of Torts § 283 (1965).

Prosser and Keeton also discuss whether allowances are made in the law as exceptions to the reasonable person standard of care for those who lack full mental capacity.

As for more severe mental disabilities, including total insanity, where the actor entirely lacks the capacity to comprehend a risk or avoid an accident, one might expect a relaxation of the standard similar to the physical disability rule. Yet, for a variety of reasons, the law has developed the other way, holding the mentally deranged or insane defendant accountable for his negligence as if the person were a normal, prudent person. Against the apparent injustice of making persons responsible according to a standard they cannot meet, several rationales have been offered to support the decision to hold mentally deranged defendants accountable for their negligence and certain other torts, including the difficulty of distinguishing true incapacity from mere bad judgment, the belief that the custodians of incompetents will be encouraged by the rule to watch them more closely and keep them under control, and the perceived sense of fairness, even in the absence of moral blame, of a rule requiring mental defectives who live among the rest of society to conform to the general standards of conduct or pay their innocent victims for the damage they cause.

Prosser and Keeton, *supra*, § 32 at 177–178 (footnotes omitted).

■ Some authorities support the adoption of a double standard of care, namely an objective, external standard for defendant's negligence and a "relaxed," subjective standard for contributory negligence. *See* 3 F. Harper, F. James and O. Gray, Law of Torts § 16.2 at 391–392 (2d ed. 1986). In the absence of some new pronouncement on this subject from our supreme court, we will follow the standard set out in *McGriff, supra*, the Restatement (Second) of Torts and the view taken by Prosser and Keeton.

Nevertheless, and largely because of the long-continued process of setting one over against the other, contributory negligence, in general, is determined and governed by the same tests and rules as the negligence of the defendant. The plaintiff is required to conform to the same objective standard of conduct, that of the reasonable person of ordinary prudence under like circumstances. The unreasonableness of the risks which he incurs is judged by the same process of weighing the importance of the interest he is seeking to advance, and the burden of taking precautions, against the probability and probable gravity of the anticipated harm to himself.…

The same intelligence, attention, memory, knowledge and judgment are re-

quired of the actor for the protection of his own interests as for the protection of others, and the same allowance is made for his physical inferiorities, and for the immaturity of children. Whether the plaintiff's violation of a safety statute should be considered evidence of negligence or negligence per se also is typically treated the same as when the violation is by the defendant.

Prosser and Keeton, *supra*, § 65 at 453 (footnotes omitted). We conclude that the instructions given by the trial court on negligence, contributory negligence, and standard of care were proper.

### ASSUMPTION OF RISK

Galindo argues that the evidence did not support the giving of an instruction on assumption of risk. The application of the doctrine of assumption of risk requires a much more subjective test than that used for contributory negligence. In *Garcia v. City of Tucson*, 131 Ariz. 315, 640 P.2d 1117 (App.1982), we made some distinctions:

> A general knowledge of "a danger" is not sufficient, but rather plaintiff must have actual knowledge of the specific risk which injured him and appreciate its magnitude. Furthermore, although one may assume the risk of the negligence of another if he is fully informed of such negligence, he is not, under the doctrine of assumption of risk, bound to anticipate the negligent conduct of others.... The failure to appreciate and comprehend the consequences of one's acts is properly a matter of contributory negligence and not assumption of risk. [Citations omitted].
>
> [T]here is a distinct difference between contributory negligence and assumption of risk.... Contributory negligence arises when the plaintiff fails to exercise due care. Assumption of risk arises regardless of the due care used as it is fundamentally based on consent. Contributory negligence is not.

131 Ariz. at 319, 640 P.2d at 1121. However, the defense of contributory negligence and assumption of risk occasionally overlap, and the same conduct in some cases supports the application of both doctrines. *Grant v. Arizona Public Service*, 133 Ariz. 434, 652 P.2d 507 (1982).

The same operable facts in this case would support a finding of both contributory negligence and assumption of risk. The jury was instructed by the court to apply different considerations in determining whether assumption of risk had been proven and whether it should be applied. The court instructed the jury that a person assumes the risk of injury when he *voluntarily exposes himself to the specific danger* which causes his injury and *which he knows about and understands*. The instruction on assumption of risk permitted the jury to take into account Jose's mental deficiency as one of the factors to consider together with all of the other evidence. However, the issue of Jose's state of mind and its effect on the application of the doctrine of assumption of risk was properly left to the jury for its determination. The jury was told that the medical experts' opinions were not absolute, that the jury was not bound by what the experts told them. It was to consider each opinion, weigh the reasons given for it and finally "give it the weight to which you deemed it entitled." The jury received all of the evidence offered relating to Jose's mental deficiency and was in a position to accept or reject the defense based on the evidence.

Nothing is more settled in the negligence law of Arizona than the proposition that assumption of risk and contributory negligence in all cases whatsoever are questions of fact and shall at all times be left to the jury. Ariz. Const. art. 18, § 5. The courts of Arizona have repeatedly interpreted the phrase "question of fact" to include both questions of law and fact, and the jury is permitted to determine first, whether or not contributory negligence or assumption of risk exist from the facts, and next whether to apply the law of contributory negligence or assumption of risk as a defense. *Heimke v. Munoz*, 106 Ariz. 26, 470 P.2d 107 (1970); *State v. Cress*, 22 Ariz.App. 490, 528 P.2d 876 (1974). There

was sufficient evidence to submit both issues to the jury.

## CONCLUSION

We believe the public is best served when the issues of contributory negligence and assumption of risk are left to the jury for determination under traditional notions of the reasonable person standard of care based on all of the circumstances, rather than to fashion various subjective tests to determine in retrospect what standard of care should have applied to the facts and circumstances of each case. The standard of care required of a reasonable person is certain and yet at the same time flexible enough to be applied by the jury under the circumstances attending the questioned conduct.

The judgment is affirmed.

LIVERMORE, P.J., and BIRDSALL, J., concur.