459 P.2d 743

Albert D. HARDY and Madelyn Hardy, husband and wife, Appellants and Cross-Appellees,

v.

SOUTHERN PACIFIC EMPLOYEES ASSOCIATION, Inc., a California corporation; Kenneth C. Baker and Jane Doe Baker, husband and wife, Appellees and Cross-Appellants.

No. 2 CA–CIV 608.

Court of Appeals of Arizona.

Division 2.

Oct. 20, 1969.

Rehearing Denied Nov. 18, 1969.

Review Denied Jan. 13, 1970.

Spaid, Fish, Briney & Duffield, by Richard Briney, Tucson, for appellants and cross-appellees.

Lesher & Scruggs, by Robert O. Lesher, Tucson, for appellees and cross-appellants.

HATHAWAY, Judge.

The Hardys brought suit against Kenneth C. Baker, M. D., a specialist in dermatology, and his employer, Southern Pacific Employees Hospital Association, for damages allegedly resulting from medical malpractice. A jury verdict in the sum of $45,000 was returned in favor of the plaintiffs and judgment was entered thereon. The trial court denied the defendants' motion for judgment notwithstanding the verdict, but granted their alternative motion for a new trial. The Hardys ask that we reverse the judgment and order granting a new trial and reinstate the judgment on the verdict. Appellees have cross-appealed questioning the sufficiency of the evidence to take the case to the jury.

In January, 1964, while on the job as a maintenance-of-way employee of the Southern Pacific Company, Albert Hardy spilled some creosote on his lower lip. A lesion developed on the lip and in the course of

treatment he was on July 25, 1964, referred to Dr. Baker "to rule out carcinoma (cancer)." Hardy received medical treatment from Dr. Baker for approximately 14 months and made some 34 office visits to him during that time. Dr. Baker applied various agents to the patient's lip, including dry ice, alcohol and x-ray. The lesion did not respond to the treatment, but became worse. Hardy testified that he was "always in pain," and that near the first of May, 1965, the lesion " * * * had grown, it was bigger, and on the inside of my lip there had developed a lump on the inside of my lip * * * it was about the same length as the size of the sore. And it was, you could feel it, because it was against your teeth." A biopsy was performed by Dr. Baker during September, 1965, approximately 14 months after the plaintiff was referred to him. This biopsy indicated the existence of cancer on the plaintiff's lower left lip, which was removed by Dr. Nattinger that same month. On October 11, 1966, another biopsy by Dr. Nattinger was done, and further surgery to eliminate the cancer was performed on November 15, 1966.

Expert testimony was given to the effect that proof of the existence of cancer is dependent upon a biopsy and microscopic examination and that such procedure was recognized in the community as a standard diagnostic test for the determination of the existence of cancer. Dr. Baker testified that he discussed with the patient the advisability of a biopsy for the first time in September of 1964. Hardy denied that a biopsy had been mentioned prior to September, 1965.

During the period of treatment by Dr. Baker, Hardy continued his outdoor assignment of employment, although other assignments may have been available. Dr. Baker testified that he recommended shady work and cautioned against harmful effects of working in the sun. The doctor's records do not reflect that such a caution was given and Hardy denied that it was.

In granting a new trial the court gave the following reasons:

"1. The damages assessed in the jury's verdict were greatly excessive and bore no relation to the damages properly and lawfully proved;

"2. The court erred in admitting any evidence concerning the 'second surgery' or the 'third surgery' or of the 'second cancer' suffered by Albert Hardy, or of any injury or damages related to or caused by any of these things; or of any permanent or allegedly permanent mental or physical injury to Albert Hardy; or of any claimed injury or damage to plaintiff after September 15, 1965;

"3. The court erred in charging the jury in giving plaintiff's requested instructions 9, 10, 11 and 12, and each of them, and in denying the defendants' requested instructions 2, 3 and 4, and each of them;

"4. The verdict is so greatly excessive bearing no reasonable relation to damages proven by the evidence, that it is clearly the result of passion or prejudice;"

■ The trial judge has wide discretion in granting a new trial and so long as the granting is based upon reason and the law, we will not interfere. Mayo v. Ephrom, 84 Ariz. 169, 325 P.2d 814 (1958). We will initially consider the second reason given for the new trial; that the court erred in admitting evidence concerning the second or the third surgery and the second cancer, noting that no objection was made to the admission of this evidence.

■ Upon examination of the record, we believe that the trial court did not commit error in admitting evidence of these subsequent cancers and surgeries. The record indicates that the plaintiff testified that approximately one year after removal of the first cancer, "a spot had appeared in the same place." Dr. Baker testified that once a cancer of this character has

been diagnosed and removed the possibility for recurrence is "very minimal."

The following testimony, elicited from the surgeon, Dr. Nattinger, who operated on the plaintiff, is pertinent:

"Q How many times did you see Mr. Hardy in the office prior to the second surgical procedure you did in the office?

A Thirteen times.

Q What was the purpose, Dr., of seeing the patient on those occasions? I don't want you to be specific as to each, but on the overall.

A It's a routine thing to follow a patient, especially with a malignancy, for a year at least.

Q Is there any recognized medical standard of time for which it is advisable to follow at intervals a patient who has had a cancer and has had it removed by surgery?

A After the first six months one might drop off the observation to maybe every two months for another six months. Once or twice a year for another year. And you see them practically all your life.

Q Is there some rule of thumb about a five year period?

A It is an arbitrary figure, yes.

Q * * * By reason of the cancer having been diagnosed and removed is it medically advisable to follow the patient for a minimum period of five years at infrequent intervals to make certain that cancer has not yet spread?

A Observation over that length of time is more to be certain that no *new* ones develop.

Q Do you sometimes follow a patient who has had a cancer of the char-

acter that Mr. Hardy had for the purpose of making sure that that one hasn't spread?

A Oh, yes, of course.

Q What are the consequences if the particular type of carcinoma that you operated out of Mr. Hardy's lip, if it does in fact spread?

A Locally or widely?

Q Both.

A A local spread, if the patient is kept under observation, can be re-operated without too much difficulty.

Q Did that occur in this case?

A Yes, it did."

An objection was made to the last answer, but no motion was made to strike the testimony.[1]

"A On the thirteenth visit * * * we noticed a scaling and some signs of abnormality *in the site of the operative scar*. (Emphasis added)

* * * * * *

A With this type of report (biopsy), where we obviously went the reasonable distance beyond it, it became necessary to plan a second operation.

Q Why?

A To clear the local area, *because we weren't far enough beyond it*. (Emphasis added)

* * * * * *

Q When the gentleman came to the office and you found that a cancer which you removed by a wide biopsy, if I use words that have any meaning to you, where was it located, the cancer that you found at that location in relationship to

---

1. Udall, Arizona Evidence § 12, pp. 24–25, states:
"[W]here an objection is made and sustained, but the witness nevertheless answers, the answer may be considered as evidence and the ruling will not be reviewed unless counsel moves to strike

the answer. *If a party does not object to a question until the answer is given, he cannot complain of error, unless he also moves to strike the answer.*"

(Emphasis supplied) See also 39 Am. Jur., New Trial, § 116, p. 127.

where the cancer had been that you operated on September 23, 1965?

A  In the immediate vicinity.

\*    \*    \*    \*    \*    \*

A  It was only four days from the excision of this small lesion in the office until we took him to Veterans Hospital for further surgery. In assuming that—let me go back a little bit. At the time this one was done the edges were proven free of any carcinoma, any malignancy. So then within a matter of, I have forgotten how long, roughly three months, probably, *to find a recurrence of further malignancy* one would have to suspect then that the areas throughout the lip would in due course of time break down and have further trouble. So we decided then to remove the entire exposed margin of the lip from one corner to the other. This was carried down, oh, approximately an eighth of an inch, down to the deep muscles of the lip itself \* \* \*." (Emphasis added)

Although this testimony was subsequently contradicted in part by Dr. Nattinger, we believe that from the foregoing testimony the jury could have reasonably concluded the second cancer and operation was causally connected to the initial difficulty, and that a possibility exists that the cancerous growth may have recurred. Vigil v. Herman, 102 Ariz. 31, 424 P.2d 159 (1967). Consequently, we believe the trial court was correct in admitting this testimony, and that it erred in specifying this as one of the grounds for a new trial.

■ We now proceed to the third reason given by the trial court in granting a new trial, to-wit: that it erred in charging the jury in giving plaintiff's requested instructions 9, 10, 11 and 12 and in denying the defendants' requested instructions 2, 3 and 4. In giving the jury instructions, the trial court must consider the evidence in the strongest manner supporting the theory of the party requesting

the instruction. Webb v. Hardin, 53 Ariz. 310, 89 P.2d 30 (1939); City of Tucson v. Holliday, 3 Ariz.App. 10, 411 P.2d 183 (1966). The plaintiff's instructions dealt with damages the plaintiff had suffered to the date of trial, future detriment, loss of earning power, and life expectancy. We believe that the instructions were warranted in light of the evidence presented. The plaintiff was required to change his occupation to avoid further danger as a result of his lip condition. The permanent disfigurement brought about from the operations clearly operated to his detriment. The medical expense for life-time observation and the loss of earnings and future earning capacity were items properly considered. We conclude that on the basis of the evidence and the overall instructions given that the defendants were not prejudiced and the jury was properly instructed.

■ By defendants' instruction No. 2, the court was requested to instruct the jury that:

"If you should find it to be a fact, that Dr. Baker did not warn the plaintiffs of the possibility of cancer, or warn Mr. Hardy to change jobs, (this) cannot be the basis for a verdict for plaintiffs here."

Apparently the defendants requested this instruction on the basis that there was no expert testimony showing a duty on Dr. Baker to warn Mr. Hardy to change jobs. However, we believe that the trial court properly refused the instruction on the basis that Dr. Baker himself testified that:

"The constant traumatization that he got from the sun would keep this thing going and make it finally become inflamed and it must have gone down and he developed a cancer \* \* \*"

Considering the expert testimony relating to the harmful effects of continuous exposure to sunshine, the defendant's knowledge of the plaintiff's outdoor employment, and his failure during the 14-month period of treatment, according to the plaintiff, to caution against working in the sunlight, we

believe that laymen could reasonably conclude that the defendant was remiss in not so advising the plaintiff. The omission to warn here comes within the realm of common knowledge and is therefore an exception to the rule requiring expert testimony. Revels v. Pohle, 101 Ariz. 208, 418 P.2d 364 (1966); State v. Horn, 4 Ariz.App. 541, 422 P.2d 172 (1966); Boyce v. Brown, 51 Ariz. 416, 77 P.2d 455 (1938); Butler v. Rule, 33 Ariz. 460, 265 P. 757 (1928); 13 A.L.R.2d at p. 34, 81 A.L.R.2d at p. 608. Also see Stallcup v. Coscarart, 79 Ariz. 42, 282 P.2d 791 (1955).

■ Through defendants' requested instruction No. 3, the court was requested to instruct the jury that " * * * as a matter of law the plaintiffs have failed to establish that any act or omission of Dr. Baker caused Mr. Hardy to develop cancer." Clearly this instruction calls upon the court to rule upon a matter where controverting evidence has been presented.

"Such an instruction invades the province of the jury since it is the only tribunal to pass on controverted facts in courts of law, and until the verdict is rendered no such fact is established or shown to exist." 53 Am.Jur., Trial § 605, p. 478.

Defendants' requested instruction No. 4 would have instructed the jury:

"Unless you find that Dr. Baker was guilty of malpractice in failing to have a biopsy made earlier, then you must return your verdict for the defendants."

This ignores the possibility that the cancer resulted as a proximate cause of his neglect in failing to warn Hardy to discontinue outdoor employment. This instruction also had the same fault of instruction No. 3, in that it invaded the province of the jury.

■ Finally, in considering the damages, if the case has been submitted to the jury on proper legal rulings and instructions, the verdict will not be deemed the result of passion and prejudice if within the range of credible evidence. State v. Gobin, 73 Wash.2d 206, 437 P.2d 389 (1968).

■ Evidence shows that the plaintiff was under Dr. Baker's medical care for a period of 14 months from July, 1964 until September, 1965. Since 1965 two operations had taken place, one a biopsy and then in September, 1965, an operation to remove the cancer. In October, 1966, another biopsy was performed. In November an operation to remove further cancer was undertaken. Dr. Nattinger testified that for a period of at least five years subsequent to the last operation the plaintiff will have to undergo further medical treatment, and, presumably for the rest of his life he will have to at least undergo annual checkups.

In addition to an indefinite future period that the plaintiff will be required to undergo medical treatment, the physical appearance of his lip has been greatly altered. The second operation removed the entire exposed margin of his lip, from one corner to the other, down to a depth of approximately one-eighth of an inch. The skin on the underside of his lip was then pulled up and curved over the raw surface to form a new or reconstructed lip for the plaintiff. The plaintiff testified that he had a general numbness in this new lip, that the lip was smaller and also tighter than before, and small lumps developed all the way across the lip.

This evidence coupled with other testimony, such as the pain and suffering endured by the plaintiff, and the requirement that he seek new employment that would not necessitate his being outdoors, tends to convince us that the jury verdict of $45,000 was not an excessive award. Where there is conflicting evidence as to the extent of the plaintiff's injuries, it is a question for the jury. It is not the function of the trial court nor the appellate court to determine the amount which would compensate the plaintiff. Keen v. Clarkson, 56 Ariz. 437, 108 P.2d 573 (1940). The award does not shock the conscience of this court.

We believe that the trial court exceeded the bounds of judicial discretion in granting a new trial, Rogers v. Mountain States Telephone and Telegraph Co., 100 Ariz.

154, 412 P.2d 272 (1966), and therefore reverse with instructions to reinstate the judgment entered on February 19, 1968.

In view of our disposition of this matter, we do not find it necessary to consider the points raised by the appellee in his cross-appeal.

KRUCKER, C. J., and HOWARD, J., concur.