489 P.2d 843

Fred NUSSBAUMER et al., Petitioners,

v.

The SUPERIOR COURT of the State of Arizona IN AND FOR THE COUNTY OF YUMA; the Honorable John A. McGuire, a Judge of the Superior Court of the State of Arizona in and for the County of Yuma, and the Presiding Judge in Cause No. 28744 in the Superior Court of the State of Arizona in and for the County of Yuma, and Imperial-Yuma Production Credit Association, plaintiff below and real party in interest herein, Respondents.

No. 10408.

Supreme Court of Arizona,
In Banc.

Oct. 15, 1971.

Rehearing Denied Nov. 16, 1971.

Ralph F. Brandt, Yuma, and Snell & Wilmer, by James A. Honer, Phoenix, for petitioners.

Westover, Keddie & Choules, by Ted B. Bowen, Yuma, for respondents.

UDALL, Justice:

Petitioners, by this Petition for Special Action, seek review of an order of the Superior Court of Yuma County granting respondents' motion to set aside the sheriff's sale of July 28, 1970. The proceedings and circumstances relating to said order granting the motion to set aside the sale are more fully set forth below.

Petitioners, Fred and June Nussbaumer, are engaged in agricultural pursuits in Yuma County, and for a period of at least five years have been financed in these operations by respondent, Imperial-Yuma Production Credit Association (hereinafter "P.C.A."). Substantial loans of money, totalling approximately $378,656.16, were made to the Nussbaumers and these loans were secured by real estate mortgages, as well as crop and chattel security agreements. The Nussbaumers defaulted on their obligations and P.C.A. instituted action below (Cause No. 28744), seeking foreclosure of its chattel, crop and real estate mortgages. Shortly thereafter, P.C.A. and the Nussbaumers entered into an agreement for settlement.

On or about June 24, 1970, and pursuant to the May 20, 1970 settlement agreement, P.C.A. obtained judgment against the Nussbaumers in the amount of $444,621.99, which sum included the principal due and owing P.C.A., costs of suit, accrued interest, attorneys' fees of $40,000.00, and accruing interest at the rate of 9.75% per annum from the date of judgment.

On July 28, 1970, pursuant to a writ of execution, the sheriff of Yuma County sold the Nussbaumers' property at execution sale. At this sale, P.C.A. bid in the sum of $460,231.64 (apparently the amount of the judgment of $444,621.99, plus interest at the rate of 9.75% from the date of judgment to the date of sale and the cost of the execution sale).

Prior to the July 28th foreclosure sale, on February 9, 1970, P.C.A. filed an action against McElhaney Cattle Company (hereinafter "McElhaney"), an Arizona corporation, in the Yuma County Superior Court (Cause No. 28701). P.C.A.'s complaint alleged therein, that McElhaney had paid $20,000.00 directly to the Nussbaumers for the purchase of crops in which P.C.A. al-

legedly had a security interest, thereby occasioning a loss of security to P.C.A. in the amount of $20,000.00. McElhaney answered. P.C.A.'s complaint and filed a third party complaint against the Nussbaumers, seeking recovery over and against, and indemnity from, the Nussbaumers to the extent that McElhaney might be held liable to P.C.A. A similar complaint was filed against Desert Seed Company and several others. (Cause No. 29197).

These actions, brought by P.C.A., were still pending when P.C.A. bid in the full amount of its judgment against the Nussbaumers at the July 28th foreclosure sale. On October 6, 1970, McElhaney filed a motion for summary judgment in Cause No. 28701, asserting that since its liability to P.C.A. was "derivative and secondary" to that of the Nussbaumers, it was entitled to judgment as a matter of law. The basis for said motion for summary judgment was that P.C.A.'s judgment against the Nussbaumers was satisfied in full when P.C.A. bid in the full amount of its judgment at the foreclosure sale; consequently resulting in termination of McElhaney's derivative or secondary liability. A similar motion was subsequently filed by the Desert Seed Company in Cause No. 29197.

On October 13, 1970, P.C.A. filed a motion for modification in this action below (against the Nussbaumers), seeking to have the judgment obtained by it and the July 28th foreclosure sale modified or vacated on the grounds that their attorney had made a mistake in bidding in the full amount of its judgment at the foreclosure sale. On November 16, 1970, a hearing was held on P.C.A.'s motion and on November 23, 1970, the trial judge entered an order setting aside the foreclosure sale. The order provided that P.C.A. might have special execution issued and could hold a new sale of the Nussbaumers' real property at its own expense.

From that order, petitioners filed this Petition for Special Action, contending that P.C.A.'s motion "was not well taken and should have been denied, and that the

court erred, abused its discretion and exceeded its jurisdiction in entering the November 23, 1970 Order."

We have reviewed the arguments advanced by petitioners to this Special Action and, having found them to be meritorious in that the trial judge abused his discretion in granting P.C.A.'s motion to vacate the sale, we hereby grant petitioners the relief requested. Arguments advanced by petitioners are as follows:

(1) "The lower court lacked jurisdiction to entertain P.C.A.'s motion for modification and to enter an order granting their motion to set aside the foreclosure sale."

The rule in Arizona is well-settled that an execution sale may be set aside on motion in the court which issued the process or in an independent action in a court possessing equitable jurisdiction. Redman v. White, 85 Ariz. 82, 331 P.2d 1096 (1958); See also 33 C.J.S. Executions §§ 237 and 238; 21 Am.Jur. Executions § 634. The power of a court to set aside an execution sale naturally arises from the inherent power to control its own process. Johnson v. Jefferson Standard Life Insurance Co., 5 Ariz.App. 587, 429 P.2d 474 (1967).

(2) "Assuming the court had jurisdiction to hear and rule upon P.C.A.'s motion for modification, nevertheless, as a matter of law P.C.A. was not entitled to equitable relief (i.e., setting aside of the July 28, 1970 foreclosure sale) on the basis of its alleged mistake" and "the trial court erred in entering an order granting the motion to set aside sheriff's sale in view of the equities in favor of Petitioners."

In granting respondent's motion, the lower court stated that it was "painfully evident" that the $460,231.64 bid was a "substantial unilateral mistake on the part of the plaintiff's attorney." It appears that the trial judge, in arriving at his decision to order vacation of the July 28th foreclosure sale, was as impressed by the testimony given regarding the post-sale,

depressed value of the Nussbaumer property as he was by the fact that P.C.A.'s attorney had, through his own inadvertence, made a unilateral mistake in bidding in the full amount of the judgment.

In Arizona, it is well established that execution sales may be set aside on motion and, while such motions are addressed to the sound discretion of the court issuing the process, Johnson v. Jefferson Standard Life Insurance Co., supra; See also City of St. Louis v. Peck, 319 S.W.2d 678 (Mo.App.1959); 30 Am.Jur.2d Executions § 713; 33 C.J.S. Executions §§ 232 and 240; said discretionary power is not without limitation. In exercising his discretionary powers, a trial judge must not allow his decision to succumb to whim or fancy; rather, his decision must be based on pertinent principles of law or equity as applied to the facts and circumstances of his case. In other words, the ultimate decision must be based on "reason and the law." Hardy v. Southern Pacific Employees Association, 10 Ariz.App. 464, 459 P.2d 743 (1969).

The general rule, dealing with vacation of execution sales because of inadequate bids, is that mere inadequacy of price, where the parties stand on an equal footing and there are no confidential relations between them, is not, in and of itself, sufficient to authorize vacation of the sale unless the inadequacy is so gross as to be proof of fraud or is so gross that it shocks the judgment and conscience of the court. McCoy v. Brooks, 9 Ariz. 157, 80 P. 365 (1905); Smith v. Arizona Engineering Co., 21 Ariz. 624, 193 P. 303 (1920). We believe that the test used for an underbid is inapplicable to an overbid. See Woodside Savings & Loan Ass'n, 36 Misc.2d 954, 233 N.Y.S.2d 541 (1962). Where a grossly inadequate price is bid, such as shocks one's conscience, an equity court may set aside the sale, thus insuring within limited bounds a modicum of protection to a party who has absolutely no control over the amount bid and this, in effect, insures that the foreclosed property is not "given away." The situation dealing with an overbid is, however, entirely different since the bidding party has full control of his own bid and has the means of ascertaining the property's true value. Where an overbid is made, which has in no way resulted from deceit, undue influence or other form of fraudulent inducement but is, rather, the result of one's own negligence, ignorance or inadvertence, we feel that equity should not intervene. Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby. In Mackey v. Philzona Petroleum Company, 93 Ariz. 87, 378 P.2d 906 (1963), this court stated:

"The evidence is uncontradicted that plaintiff Mackey knew all the facts surrounding the transaction upon which he claims the right to rescind at the time of his discharge as general manager of the corporation. Pomeroy states the rule as being well settled that a simple mistake by a party as to a legal result of an act which he performs is no ground for relief. Pomeroy, Equity Jurisprudence, 5th Ed., Section 843.

Plaintiffs rely on the California case of Chung v. Johnston, 128 Cal.App.2d 157, 274 P.2d 922, advancing the argument that equity will give relief against conduct which is merely thoughtless or inadvertent. If that case reflects the rule in California, we reject it here for business transactions where men of sound minds deal at arms length." 93 Ariz. at 92–93, 378 P.2d at 909.

While the situation in the case at bar is different from that of the *Mackey* case, the principles espoused therein and quoted above are applicable herein. In the instant case, as in *Mackey*, the parties dealt at arm's length, such being evidenced by the fact that each was represented by counsel. The facts were known and available to each party, and under these circum-

**508**

stances we feel respondents were not entitled to the relief granted them.

Also to be noted is that the rule of "caveat emptor" applies to purchasers at execution sales. Lebrecht v. Beckett, 96 Ariz. 389, 396 P.2d 13 (1964). Under this rule, the execution purchaser

"* * * cannot set up, as a defense to his liability for the purchase money or for a deficiency on a resale, defects in the debtor's title, the existence of encumbrances, a deficiency in quantity of the land, *or, in the absence of artifice or fraud, that the price bid is more than the property is worth.*" [Citations omitted and emphasis added.] 33 C.J.S. Executions § 221 at 468.

With this proposition we are in complete agreement. If a foreclosure sale could be set aside or modified simply because the bidder at such sale makes a bid which he later claims to be excessive, an uncertainty would be rendered in the judicial sale process which would seriously curtail the effectiveness and conclusiveness of such sales. It is for this reason that Arizona courts have long held that the general policy is to sustain judicial and execution sales. Young Mines Co., Ltd. v. Sevringhaus, 38 Ariz. 160, 298 P. 628 (1931); Moser v. Young, 50 Ariz. 389, 72 P.2d 682 (1937).

From the foregoing, it appears that a mere mistake on the part of a party, whether it be a mistake of fact or law, which results *solely* from that party's own negligence or inadvertence, does not constitute ample grounds entitling him to equitable relief. We feel the trial court abused its discretion in granting P.C.A.'s motion, allowing vacation of foreclosure sale. We, therefore, vacate and set aside the trial court's order granting P.C.A.'s motion to set aside the July 28th foreclosure sale.

STRUCKMEYER, C. J., HAYS, V. C. J., and LOCKWOOD, J., concur.

NOTE: Justice JAMES DUKE CAMERON having disqualified himself, did not participate in the determination of this matter.