528 P.2d 871

**IMPERIAL–YUMA PRODUCTION CREDIT ASSOCIATION, Appellant,**

v.

**Fred NUSSBAUMER and June E. Nussbaumer, husband and wife, Appellees.**

**No. I CA–CIV 2205.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 3, 1974.

Jennings, Strouss & Salmon by Charles R. Hoover, M. Byron Lewis, Phoenix, for appellant.

Brandt & Engler by Ralph F. Brandt, Yuma, for appellees.

. OPINION

EUBANK, Judge.

This appeal questions the trial court's jurisdiction to conduct a post-judgment proceeding, in the nature of an accounting, in a mortgage foreclosure case, which resulted in a judgment against the appellant in the sum of $36,967.12.

The facts leading up to this "accounting proceeding" are stated in Nussbaumer v. Superior Court, 107 Ariz. 504, 489 P.2d 843 (1971) and will not be repeated here. It is sufficient to say that the Supreme Court held that although a Superior Court retained jurisdiction in a mortgage foreclosure action to set aside an execution sale, such a decision to set aside the sale must be based on "reason and the law." The Supreme Court then proceeded to vacate the trial court's order, which had vacated the execution sale, stating that the mere mistake on the part of the appellant in "overbidding" at the sale was not a sufficient basis on which to set it aside.

Prior to the issue raised in the special action which was the subject of the decision in Nussbaumer v. Superior Court, supra, the appellees filed a "Motion for Accounting" in the trial court alleging that the June 29, 1970 judgment had been satisfied in full but that additional or surplus funds had been received by the appellant which were not credited or paid to appellees. This motion was filed on September 24, 1970, almost three months after the judgment and two months following the execution sale. Appellant opposed the motion on several bases. The first was that there was no statutory basis for an accounting in a mortgage foreclosure case. The second basis was in the form of a motion for reformation or rescission of the May 20, 1970 Agreement for Settlement since, "The whole tenor of the Agreement demonstrates that plaintiff [appellant] was not accepting the realty, chattels and choses or causes in action per se in satisfaction of defendants' *debt* account, but rather would reduce these to cash by sale and collection, and *turn over any surplus to defendants . . . .*", and that at the sheriff sale,

based on their understanding, appellant "simply bid in the full amount of judgment since plaintiff [appellant] had agreed to seek no deficiency from defendants." The third basis was also in the form of a motion to modify or vacate, in part, the June 29, 1970 judgment because of "mistake, inducement, surprise and inadvertence", in that appellant was induced by the appellees to bid the full amount of the judgment at the sale. This latter motion was, of couse, a Rule 60(c)(1) motion, Rules of Civil Procedure, 16 A.R.S., addressed to the sound discretion of the trial court. On October 7, 1970, the trial court denied all motions. Then as reported in Nussbaumer, supra, the appellant moved for modification and vacation of the judgment and July 28th foreclosure sale on the grounds that "their attorney had made a mistake in bidding in the full amount of its judgment at the foreclosure sale." On November 23, 1970, the trial judge granted appellant's motion and set aside the foreclosure sale, permitting the appellant to conduct a new sale of appellees' property at its own expense. As we have already noted, the Supreme Court on October 15, 1971, held that the trial court abused its discretion and vacated the November 23rd order.

Thereafter, on November 18, 1971, appellees again filed a motion for an accounting and requested the trial court to determine the surplus funds due them. The record reveals that for the first time appellant raised the jurisdictional basis of the court to consider the matter. In its response filed on January 10, 1972, it contended that all of appellees' claims were merged in the final judgment. In addition appellant raised the affirmative defenses of waiver, estoppel, and judicial estoppel, and alleged that the motion was a collateral attack on the final judgment. Finally, after the filing of briefs and argument was had, the trial court awarded judgment to the appellees; and this appeal followed.

■ The only question raised here is whether the trial court had jurisdiction to proceed as it did. We hold that it did have jurisdiction to conduct a post-judgment proceeding, in the nature of an accounting, to determine whether or not there were surplus funds resulting from the foreclosure sale, and if so, to award them to the rightful party; we, therefore, affirm the June 6, 1972 judgment.

■ In Nussbaumer, supra, our Supreme Court reminded us that the execution sale was equitable in nature and subject to the power of the court to either affirm the sale or to set it aside on the basis of "reason and the law". In addition, under our statutes, the trial court has the duty and responsibility after the sale to pay other perfected liens and "if there are no other liens the balance shall be paid to the mortgagor." A.R.S. § 33-727(B). *See also* A.R.S. § 44-3150(B). This all recognizes that continuing jurisdiction remains in the trial court to completely deal with the circumstances of the particular foreclosure. In addition, the Settlement Agreement here between the parties requires, in substance, the same result. For example, paragraphs 4 and 8 of the Agreement for Settlement read as follows:

"4. As to the personalty secured by the crop and chattel security agreement, PCA [appellant] will liquidate and sell all of said property, except as hereinafter provided under applicable sale provisions for the foreclosure of security agreements of the Uniform Commercial Code. The parties contemplate that such sale and liquidation will be by an advertised public auction conducted by the Arizona Auctioneers of Phoenix, Arizona, in order to obtain the best price, for cash, for the said property. The net proceeds of that sale (after first deducting the costs and expenses of sale, including advertising, labor, the auctioneer's commission, etc.) shall be credited to the total of said judgment, and shall be a partial satisfaction thereof.

\*   \*   \*   \*   \*   \*

"8. Should PCA [appellant] obtain a surplus after the sale of all personal and real property, and the prosecution

and/or collection of alleged diverted crop funds from third parties, after payment to PCA [appellant] of all costs and expenses of litigation and collection, including attorney fees, then such surplus would be paid to Nussbaumer. However, PCA assumes no duties or obligations to enforce collection of any claims."

The chattel security agreements, referred to in paragraph 4, do not include a provision governing the distribution of surplus funds following sale; however, the Uniform Commercial Code, made applicable by paragraph 4, expressly provides that "the debtor is entitled to any surplus." A.R.S. § 44–3150(B). Further, paragraph 8 expressly provides that any surplus after sale would belong to appellees.

■ Since the Agreement for Settlement and the June 29, 1970 judgment were drafted by the appellant,[1] all inferences to be drawn from them must favor the appellees.

■ In our opinion the intention of the parties as expressed in the Agreement for Settlement is not ambiguous, and any surplus over and above the mortgage debt and expenses was to be paid to the appellees. Implied in all of this is appellant's consent to a determination of a surplus, if such existed, in the main foreclosure action and this is all that the trial court did here. This result certainly conforms to equitable principles.

Finally, even without the specific provisions set out in the agreement, the general law would require the payment of the surplus funds to the appellee. *See* 55 Am.Jur. 2d, Mortgages, § 930 (1971); 59 C.J.S. Mortgages § 799 (1949); Annot., 117 A.L.R. 1054 (1938), Supp. at 90 A.L.R.2d 501, 567 (1963).

HAIRE, P. J., and STEVENS, J., concur.

1. The appellant was represented by different counsel at that time.