Jerald Lee **SMITH** et al.

v.

**FEDERAL LAND BANK OF LOUISVILLE, et al.**

**No. 1–384A77.**

Court of Appeals of Indiana, First District.

Jan. 15, 1985.

Rehearing Denied Feb. 21, 1985.

R. Scott Hayes, Scotten & Hinshaw, New Castle, for appellants.

David R. Day, Bose, McKinney & Evans, Indianapolis, H. Terrill Harvey, Millikan, Hodson & Harvey, New Castle, for appellee, First Indiana Federal Savings Bank.

Wesley D. Schrock, Shearer & Schrock, Anderson, for appellee, Florence Diana Wisehart.

NEAL, Judge.

### STATEMENT OF THE CASE

Jerald Lee and Hazel R. Smith (Smith), former owners of foreclosed property, appeal the overruling of their motion to reconsider the trial court's order setting aside a sheriff's sale on the ground of confusion and directing resale of the real property.

We affirm.

### STATEMENT OF THE FACTS

On September 20, 1983, the Federal Land Bank of Louisville (FLB) obtained an amended order granting summary judgment which provided a judgment against the Smiths and in favor of FLB in the amount of $136,892.74 plus interest and a further judgment in favor of Florence Diana Wisehart (Wisehart) in the sum of $188,000.00 plus interest. The judgment provided that the lien of the mortgage held by FLB was first and prior to all other liens and that the lien of Wisehart was second and subsequent to that lien.

Wisehart had assigned her interest in the second mortgage to the Pendleton Savings and Loan Association (now First Indiana, as the result of a merger) in an agreement

dated January 18, 1980. The trial court recognized this agreement in its order, stating that Wisehart had assigned "all of her right, title and interest" in the mortgage to First Indiana. However, "despite this apparent full assignment", the judgment later provided that the lien created in favor of First Indiana as a result of the assignment was superior to Wisehart's lien and therefore her lien was a third lien. First Indiana's brief, pg. 5. Finally, the judgment ordered the sheriff to sell the real estate at a foreclosure sale and distribute the proceeds as set forth in the judgment.

At the sheriff's sale on October 26, 1983, First Indiana, apparently believing it was the owner of all of Wisehart's interest in the assigned mortgage, bid in the full amount of the FLB mortgage and the assigned mortgage, $340,436.21. First Indiana tendered cash equaling the costs of the sale and the amount of the FLB's mortgage but it claimed credit for the remainder of its bid against the amount of its assigned mortgage. The Sheriff of Henry County, who conducted the sale, concurred with First Indiana's interpretation of the judgment—each thought that First Indiana was the sole owner of Wisehart's interest in the mortgage.

Wisehart, on the other hand, did not agree with this interpretation. On October 28, 1983, she filed a "Petition to Enforce Foreclosure Bid and For Order Directing Disbursement of Proceeds". Wisehart argued that First Indiana's assigned interest in Wisehart's second mortgage stemmed from a prior agreement disconnected with the instant one, dated January 18, 1980 wherein Wisehart granted First Indiana a first mortgage in other real estate as collateral for a first mortgage loan and as further collateral, "Wisehart granted [First Indiana] an assignment of this second mortgage *to the extent of Wisehart's debt to [First Indiana]*". (R. 53) (our emphasis). On May 20, 1983, the petition continued, First Indiana was granted a foreclo-

sure decree against Wisehart in the amount of $121,534.82 plus interest; subsequently, at the foreclosure sale, First Indiana bid in $75,000.00 on the property, leaving a deficit of $46,534.82 due and owing from Wisehart. *Id.* Thus, Wisehart argues, since First Indiana only paid $146,001.98 to the Henry County Sheriff for disbursement to FLB, and since First Indiana's lien against the Smiths is only to the extent of Wisehart's remaining debt ($46,534.82), then Wisehart is entitled to the payment of $147,899.41.[1] In other words, Wisehart requested that First Indiana be given credit only in the amount of the debt owed by Wisehart to First Indiana, asking the court to require First Indiana to pay the balance of the bid over to the Sheriff and, presumably, then, over to Wisehart.

A copy of Wisehart's petition was served upon all counsel, including counsel for the Smiths. The trial court set a hearing on the petition for November 22, 1983 and notice of this hearing was sent to counsel for the Smiths.

On November 21, 1983, First Indiana filed its response to Wisehart's petition. This response was served upon all counsel by mail on November 18th. There is no claim that counsel for the Smiths did not receive this response prior to the hearing held by the court on November 22, 1983. The response raised a number of defenses to Wisehart's position; it also suggested, on pages 11 and 12, that as an alternative to granting Wisehart's petition, the court consider vacating the sale on the ground of mistake and order the property resold by the sheriff.

The hearing was held on November 22, 1983, but only counsel for Wisehart and First Indiana were present. These counsel advised the court that they were in agreement with respect to setting aside the sheriff's sale. An order to this effect was tendered to the court and was signed by

1. $340,436.21 (total amount bid)
 −146,001.98 (amount paid to FLB)
 $194,434.23
 − 46,534.82 (First Indiana's lien against Smiths)
 $147,899.41 (AMOUNT DUE WISEHART)

the court on December 6, 1983, with copies served upon all counsel.

The court found that there was "confusion concerning the bidding procedures to be followed at the Sheriff's sale on Oct. 26, 1983", and that due to such confusion, it was appropriate for the court to set aside the bid submitted by First Indiana at the sale and to vacate the sale and the deed of the Henry County Sheriff conveying the real estate to First Indiana. The order stated that First Indiana should be permitted to bid, at the resale of the property, the sum of $196,808.12, such sum representing the amount of FLB's lien plus the deficiency due and owing[2] from Wisehart to First Indiana. Thereafter, Wisehart was free to enforce the balance of her judgment to her benefit.

Three weeks later, Smiths filed a motion to reconsider the order to vacate the sheriff's sale. A hearing was held on January 25, 1984. The trial court overruled the motion to set aside the order, finding, in pertinent part, the following:

"At the time the hearing on November 22, 1983, defendants Smith had every right to appear and participate in the proceedings and voice any objection they might have in regard to the proposal of Florence Wisehart and First Indiana Federal Savings Bank to set aside the Sheriff's sale. However, the defendants did not elect to participate in that hearing after being served with pleadings regarding same.

The court found in its order setting aside the Sheriff's sale, that confusion existed at the time of the Sheriff's sale which warranted that sale inequitable.

The order setting aside the sale, constituted an exercise of equitable jurisdiction by this court to rectify what would otherwise have been an inequitable result. This court finds that pursuant to the provisions of *I.C. 34–1–39–14*, the court did have jurisdiction to entertain further proceedings after the sale of the real estate.

\* \* \* \* \* \*

Defendants Smith acknowledge the fact that they 'did owe money', but in this court's·estimation, seek to obtain technical advantage from the confusion existing at the time of the Sheriff's sale in an attempt to argue that their obligations are now extinguished.

Defendants Smith fail to show that their position has been changed to their detriment as a result of the sale of October 26, 1983."[3]

## ISSUES

Smiths present the following issues for our review:

I. Whether the court erred in ignoring the statutory procedure which governs collection of the purchase price by the sheriff at a foreclosure sale, if said price is not immediately paid in full.

II. Whether the court erred in setting aside the sheriff's sale held October 26, 1983, without request having been made by any party in the form of motion or petition and without notice to Smiths.

III. Whether the court erred in finding there was confusion at the sheriff's sale held October 26, 1983 without having heard any evidence on the subject.

## DISCUSSION AND DECISION

I. *Jurisdiction.*

The trial judge found, in his order overruling Smiths' petition to reconsider, that he had jurisdiction to entertain further proceedings after the sheriff's sale pursuant

---

2. $52,727.12 as of October 26, 1983. Interest is accruing on this sum at the rate of $6.86 per day.

3. Wisehart obtained a personal judgment against Smiths for $187,000 plus interest and costs, and a position of third in priority on the real estate. Nothing in the foreclosure procedure released that judgment.

to IND.CODE 34–1–39–14,[4] which governs the failure of a purchaser to pay for property. Smiths' position is that IND.CODE 32–8–16–5 is applicable instead. This statute states in relevant part:

"No sheriff or deputy sheriff making any such sale shall directly or indirectly purchase any property so sold. If the purchaser of any property sold on such foreclosure shall fail to immediately pay the purchase-money the sheriff shall re-sell the property either on the same day without advertisement or on a subsequent day after again advertising the same as above provided, as the judgment creditor may thereupon direct and if the amount bid at the second sale shall not equal the amount bid at the first sale, and the costs of the second sale, the first purchaser shall be liable for the deficiency and damages thereon not exceeding ten (10) per cent and interest and costs to be recovered in the proper court by such sheriff...."

For its part, First Indiana attempts to differentiate the instant case from the situations contemplated by the above statutes; that is, the statutes were drafted in case a bidder fails or refuses to pay the amount of his bid. Here, argues First Indiana, the sheriff allowed First Indiana to credit the full amount of the assigned mortgage against its bid, a different matter entirely.

While, superficially at least, this distinction appears to hold some merit, we prefer to rest our determination on First Indiana's alternative argument: the trial court possessed equitable jurisdiction to vacate the sheriff's sale.

 In Indiana, "there is no doubt" that an action to foreclose a mortgage or lien is essentially equitable. *Farmers Bank & Trust Co. v. Ross,* (1980) Ind.App., 401 N.E.2d 74. Generally, any person whose rights are injuriously affected by a judgment of foreclosure and the sale fol-

lowing it may sue to set aside the sale. 20 I.L.E. Mortgages, Sec. 360. "An execution sale may be set aside in the court which issued the process or in an independent action in a court possessing equitable jurisdiction." *Homecraft Corp. v. Fimbres,* (1978) 119 Ariz. 299, 580 P.2d 760, 763. The vacation of the sheriff's sale is committed to a considerable extent to the discretion of the trial court: "if an appeal from the court's order is allowed, ... the appellate court will not disturb the trial court's order unless there has been a manifest abuse of discretion". 30 Am.Jur.2d *Executions,* Sec. 713 (1967).

"Courts of equity exercise a supervision of sales made under their decrees, which is not in all cases controlled by legal rules, but may be guided by considerations resting in discretion. They may set aside their own judicial sales, upon grounds insufficient to confer upon the objecting party an absolute legal right to a re-sale. They may relieve against mere mistakes, accidents, or hardships, or oppressive or unfair conduct of others, though such conduct may not amount to a violation of the law."

*Queens County Federal Savings and Loan Ass'n. v. Bermer Construction Corp.,* (1956) 155 N.Y.S.2d 195 (citation omitted).

Our research reveals decisions from other jurisdictions which demonstrate the wide range of deference paid to the trial court's discretion in setting aside sheriff's sales.

In *Nussbaumer v. Superior Court in and for the County of Yuma,* (1971) 107 Ariz. 504, 489 P.2d 843, the trial court set aside a foreclosure sale on the ground that the purchaser's attorney had made a mistake in bidding the full amount of its judgment in the sheriff's sale. In reviewing the trial court's action, the Supreme Court of Arizona conceded that "the power of a court to set aside an execution sale naturally arises from the inherent power to control

---

**4.** "Whenever the purchaser of any property sold on execution, shall fail or refuse to pay the purchase-money, he shall be liable, on motion to be made by the sheriff, or the execution plaintiff or defendant, in the proper court, five

(5) days' notice being given, to a judgment for the amount of the purchase-money, and damages not exceeding ten percent (10%) and interest, with costs, and no stay of execution shall be allowed upon the judgment."

its own process". *Nussbaumer, supra,* 489 P.2d at 845. However, said the court, even assuming jurisdiction, the purchaser was not entitled to equitable relief on the basis of its alleged mistake.

The court began its analysis by setting down the general rule dealing with vacation of sheriff's sales because of inadequate bids that "mere inadequacy of price, where the parties stand on equal footing, ... is not, in and of itself, sufficient to authorize vacation of the sale unless the inadequacy is so gross as to be proof of fraud or is so gross that it shocks the judgment and conscience of the court". The court distinguished, though, the inadequate bid situation from one dealing with an overbid:

> "The situation dealing with an overbid is, however, entirely different since the bidding party has full control of his own bid and has the means of ascertaining the property's true value. Where an overbid is made, which has in no way resulted from deceit, undue influence or other form of fraudulent inducement but is, rather, the result of one's own negligence, ignorance or inadvertence, we feel that equity should not intervene. Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby."

*Id.*
The court held that a mere mistake of fact or law which results *solely* from that party's own negligence or inadvertence, does not constitute ample grounds entitling him to equitable relief. *Id.* It determined that the trial court had abused its discretion in granting the motion to vacate the sheriff's sale.

Conversely, in *Michigan Mortgage Corp. v. Oakley,* (1980) 68 Ohio App.2d 83, 426 N.E.2d 1195, the Ohio Court of Appeals granted the trial judge much more leeway in the exercise of his discretion to vacate a foreclosure sale.

Michigan Mortgage Corp. moved to set aside a sheriff's sale the same day it was completed, explaining that its attorney had misunderstood the time of the sale and thus was unable to bid on the real estate. Due to this mistake, the property was sold for an inadequate price and therefore the sale should be set aside "in the interest of justice". *Michigan Mortgage, supra,* 426 N.E.2d at 1196.

The trial court granted the motion, stating that the successful bidder would not have substantially changed her position in reliance on the sale, since the motion was filed on the same day as the sale; further, it was unfair to deprive the corporation of an opportunity to bid on the premises solely because of their counsel's misunderstanding and mistake. *Id.*

The appellate court upheld the trial court's discretion in this case, noting that while the general policy of the law is to give judicial sales finality, "the court has wide discretion to avoid hardship and sacrifice". *Id.* (Citation omitted.)

■ It appears that generally the law allows the trial court to take a common-sense approach in deciding whether or not to vacate a bid. The court takes into consideration all circumstances, such as the inadequacy of the price, the effect of procedural irregularities, inequitable conduct, evidence of mistake or misapprehension, and problems with title. *Hogan v. Carter,* (1983) Ala., 431 So.2d 1160.

■ Bearing in mind, then, our review standard, our examination of the facts indicates that the trial court in the instant case did not abuse its discretion in setting aside the sale. The confusion as to the scope and extent of the mortgage assignment was exacerbated by the ambiguity of the judgment. The Henry County Sheriff and First Indiana conducted the sale under one impression; Wisehart had another. Wisehart is the party most affected by the misunderstanding; she agreed to a vacation of the sheriff's sale and now has the opportunity to enforce her judgment against the Smiths. The trial court found

that the Smiths acknowledged the fact that they "did owe money" but sought to "obtain technical advantage from the confusion existing at the time of the sheriff's sale".

We find no error here.

## II. *Due Process.*

Smiths contend that the vacation of the sheriff's sale violated their rights as to both procedural and substantive due process. They note that, at the time of the November 22nd hearing, only Wisehart's petition to enforce the foreclosure bid and First Indiana's response were before the court. Smiths then state "neither requests, as a form of relief, that the sheriff's sale be set aside".

This assertion is simply untrue. Admittedly, First Indiana's response commences with arguments as to the trial court's jurisdiction, Wisehart's standing, and waiver. However, on page 11 of the response, First Indiana states:

"If this court reaches the issue of the enforceability of First Indiana's bid, it should use its equitable powers to relieve First Indiana of any obligation to pay that bid on the grounds of mistake. Equity will relieve a party from an act done under mistake of fact or mixed law and fact."

On the following page, First Indiana argues:

"If the assumption [as to the scope of Wisehart's assignment] was mistaken, however, then First Indiana should be relieved of its bid, the sale set aside and the property resold pursuant to decree clearly setting forth the rights of the parties to bid at the sale."

Finally, in its conclusion, First Indiana requests that "[a]t best, this court might vacate the sale and order the property resold by the sheriff".

Copies of both the petition and the response were sent to all attorneys of record. On October 28, 1983, the court set hearing upon the petition for November 22 and notified all counsel of record of the hearing date. The trial judge found that "at the time of the hearing on November 22, 1983, defendants Smith had every right to appear and participate in the proceedings and voice and objections they might have in regard to the proposal of Florence Wisehart and First Indiana Federal Savings Bank to set aside the sheriff's sale. However, the defendants did not elect to participate in that hearing after being served with pleadings regarding same". We agree. Contrary to Smiths' argument, we find that the pleadings gave sufficient notice of the proposed relief and that there was sufficient notice and opportunity to be heard with respect to the relief actually granted.

## III. *Finding of Confusion.*

Finally, Smiths assert that it was error for the trial court to set aside the sheriff's sale based upon a finding of confusion without hearing any evidence on the subject.

As we stated, the confusion apparently stemmed from the ambiguity contained in the judgment. Clearly a trial judge may take judicial notice of its own judgment. Further, as appellees point out, the court was aware of the merger which resulted in the creation of First Indiana; such merger resulted in a change of counsel, which may account for the mistake in the original bid at the sheriff's sale. It was aware, also, of the sheriff's action crediting the full amount of Wisehart's mortgage against First Indiana's bid.

The trial court's finding of confusion is not erroneous.

In light of the above conclusions, this cause is affirmed.

Judgment affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.