**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EQUITY INCOME PARTNERS, LP, an Arizona Limited Partnership; GALILEO CAPITAL PARTNERS LIMITED, a Cayman Islands Exempted Company, *Plaintiffs-Appellants,* <br><br> v. <br><br> CHICAGO TITLE INSURANCE COMPANY, a Delaware Corporation, *Defendant-Appellee.* | No. 14-15388 <br><br> D.C. No. 2:11-cv-01614-SMM <br><br><br> ORDER CERTIFYING QUESTIONS TO THE ARIZONA SUPREME COURT |

Filed July 12, 2016

Before: Andrew J. Kleinfeld, Johnnie B. Rawlinson,
and Andrew D. Hurwitz, Circuit Judges.

Order

# SUMMARY[*]

## Certification to Arizona Supreme Court

The panel certified the following questions of law to the Arizona Supreme Court pursuant to Ariz. Rev. Stat. § 12-1862:

1. When a lender purchases property by full-credit bid at a trustee's sale, does Section 9 [of the standard form lender's title insurance policies] apply, or does Section 2 apply?

2. Is a full-credit bid at a trustee's sale a "payment" or "payment[] made" under sections 2 or 9 of the policies?

3. To what extent does a full-credit bid at a trustee's sale either (a) terminate coverage under section 2(a)(i) of the policies, or (b) reduce coverage under Section 2 and any possible liability under section 7?

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

The issue for decision in this diversity case is whether a lender's full-credit bid at an Arizona trustee's sale constitutes payment under a lender's title insurance policy. Arizona law is dispositive, but unsettled.  We therefore request the Arizona Supreme Court to interpret, under Arizona law, the provisions of a standard form lender's title insurance policy.  *See* Ariz. Rev. Stat. §§ 12-1861 to -1867; Ariz. Sup. Ct. R. 27.

### I.  Factual and Procedural Background

We summarize the material facts and procedural history as they relate to the questions to be certified.

In May 2006, Scott Mead and Keith Vertes ("Borrowers"), obtained two $1.2 million loans from Equity Income Partners Limited Partnership ("Equity") to purchase two adjacent parcels (the "Properties") in Maricopa County, Arizona.  LER 6, 174–83, 343, 351; IER 19–30.[1]  The loans were each secured by deeds of trust.[2]  LER 187, 198.  At the time, the Properties were collectively appraised as worth over $3,000,000.  IER 54–77.  Borrowers purchased owner's title insurance from Transnation Title Insurance Company; LER 14, 169; Lenders purchased an American Land Title Association Loan Policy (10-17-92) with ALTA

---

[1] The Lenders' excerpts of record are denominated "LER __" and the Insurer's excerpts of record are denominated "IER __."

[2] The deeds of trust were each recorded with an assignment of beneficial interest of an undivided eighty percent interest to Galileo Capital Partners, Ltd.  IER 19–29, 32–53, 79, 91.  We refer to Equity and Galileo collectively as "Lenders."

Endorsement – Form 1 Coverage from Ticor Title Insurance Company.[3]  IER 371–85.  Ticor's successor-in-interest is Chicago Title Insurance Company ("Insurer").  IER 267.

In September 2006, Borrowers learned that they did not have legal access to the Properties, and so informed Transnation.  LER 170, 287–88.  Transnation sued Maricopa County, the owner of the surrounding land, in an attempt to establish access.  IER 353.

In January 2007, Lenders submitted a claim to Insurer.  LER 310.  In February 2007, Insurer denied the claim, stating that Lenders had not provided evidence of "any actual loss."  LER 311–12.

Borrowers failed to make payments on the loans.  IER 134.  In March 2007, Lenders noticed trustees' sales for the Properties.  *See* Ariz. Rev. Stat. § 33-808; *see also* IER 501–06.  Shortly before the scheduled sales, Borrowers asked Transnation to make the loan payments.  IER 248–49.  With Lenders' agreement, Transnation began making interest-only monthly payments "until the access issue is resolved."[4]  IER 134–35.

In March 2010, the Superior Court found in favor of Maricopa County in Transnation's suit seeking access to the Properties.  IER 265.  Transnation stopped making payments

---

[3] The parties agree this is a standard form lender's insurance policy; no endorsements or exceptions are at issue.

[4] At Borrowers' request, Lenders extended the due date on the loans from November 2007 to July 2011.  IER 508–22, 136–147; LER 291–302.  The trustee's sale was likewise postponed.  LER 289–302; *see* Ariz. Rev. Stat. § 33-810.

on the loans in August 2010, and Borrowers made no further payments.[5]  IER 267–68.  On January 18, 2011, Lenders purchased the Properties at two trustees' sales through full-credit bids totaling over $2.6 million.[6]  *See* Ariz. Rev. Stat. §§ 33-810(A), 33-811 (providing for credit bids); *see also* IER 536–37; LER 315, 324.

In October 2010, Lenders submitted a claim to Insurer for the $1.2 million amount of each loan.  LER 305–09.  In July 2011, Lenders filed this suit in Maricopa County Superior Court; Insurer removed to the United States District Court for the District of Arizona.  LER 320–30, 355–65.

In August 2011, Insurer obtained an appraisal of the Properties which set the diminution of value of the parcels caused by the lack of ingress/egress at $343,000 as of the foreclosure sale date.  LER 127–29.  Insurer issued Lenders a check for that amount and stated that it considered the matter concluded.  LER 122–25, 128, 132.

In September 2012, the district court  ruled that Lenders "suffered loss at the time they made the loans in reliance upon the Policies," in 2006.  LER 37–41.

Insurer then obtained appraisals for the diminution of value of the Properties because of the lack of ingress or egress as of the loan date, May 16, 2006; that diminution of value was collectively appraised at $1,346,000.  IER 743–49.

---

[5] By then, Lenders had been paid over $1.4 million in interest.  IER 267–68.

[6] The bids were for $1,310,315.84 and $1,310,409.34.  IER 536–40.

On January 31, 2013, Insurer filed a motion for partial summary judgment, arguing, inter alia, that Lenders' full-credit bids should be "treated as actual payments of the principal of the indebtedness . . . thus reducing the amount of title insurance." IER 333–34. On February 1, 2013, Lenders filed a second motion for partial summary judgment, arguing that the loss amount was $1,003,000 – the result of subtracting the $343,000 payment Insurer had already made from the $1,346,000 diminution of value as of May 16, 2006 in Insurer's second appraisal. IER 714–20, 744, 748, 824.

On December 11, 2013, the district court granted Insurer's motion, ruling that Lenders' "credit bids constituted payments on the 'principal of the indebtedness,' thereby 'reducing the amount of insurance pro tanto.'" Memorandum of Decision and Order, *Equity Income Partners, L.P. v. Chi. Title Ins. Co.*, No. 2:11-cv-1614-SMM (D. Ariz. Dec. 11, 2013) ("Decision and Order"), ECF No. 123 at 11 (alteration omitted) (quoting policy § 9(b)); *see also* LER 16. Discussing a prior decision from the District of Arizona, the district court said that "the Arizona Supreme Court's decision in *Nussbaumer* [*v. Superior Court ex rel. McGuire*, 489 P.2d 843, 845–46 (Ariz. 1971)] necessarily assumes full-credit bids extinguish the debtor's obligation to lender." Decision and Order at 12 (citing *M & I Bank, FSB v. Coughlin*, 805 F. Supp. 2d 858, 867–68 (D. Ariz. 2011)); *see also* LER 17. Assuming it was "unambiguous" that the amount of insurance under the policies was limited to "the satisfaction of the underlying mortgage," the court held that by submitting full-credit bids, Lenders' "payments to themselves" reduced the amount of insurance to nothing, because they had extinguished "the security interest and

borrower's debt."  Decision and Order at 13; *see also* LER 18.**[7]**

At the parties' request, the court entered final judgment "with respect to the entire breach of contract claim" and stayed further proceedings.  Order, *Equity Income*, No. 2:11-cv-1614-SMM, ECF No. 127 at 4; *see also* IER 1195.  Lenders timely appealed the district court's grant of partial summary judgment to Insurer to the Ninth Circuit.  LER 420.

## II.  Policy Language

The Insurer's policy "insures . . . against loss or damage, not exceeding the Amount of Insurance . . . sustained or incurred by the insured by reason of . . . [u]nmarketability of the title; [or] [l]ack of a right of access to and from the land."**[8]**  IER 371.  Section 9 of the policy states:

> 9.  Reduction of Insurance; Reduction or Termination of Liability
>
> (a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto.  However, any payments made prior to the acquisition of

---

**[7]** *See* Decision and Order at 13 (citing A.R.S. §§ 33-801(5), 33-814(D); *M & I Bank, FSB v. Coughlin*, 805 F. Supp. 2d 858, 865–68 (D. Ariz. 2011); *ING Bank, FSB v. Mata*, 2:09-cv-748-GMS, 2009 WL 4672797, at *4–6 (D. Ariz. Dec. 3, 2009); *333 W. Thomas Med. Bldg. Enters. v. Soetantyo*, 976 F. Supp. 1298, 1301 (D. Ariz. 1995); and *Nussbaumer v. Superior Court ex rel. McGuire*, 489 P.2d 843, 845–46 (Ariz. 1971)).

**[8]** There are two title insurance policies, one for each parcel, with identical terms.  IER 363–85.

title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto.  The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

IER 374.  In turn, section 2, titled "Continuation of Insurance," provides:

(a) After Acquisition of Title.  The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; [or] (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds. . . .

. . . .

(c) Amount of Insurance.  The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:  (i) the Amount of Insurance stated in Schedule A; [or] (ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made . . . .

IER 372–73.  Other potentially relevant policy provisions are sections 7 and 10.  Section 7 provides:

> 7.  Determination and Extent of Liability
>
> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
>
> (a) The liability of the Company under this policy shall not exceed the least of:  (i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations; (ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or (iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.
>
> (b) In the event the Insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then

the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

IER 373.  Section 10 provides:

10.  Liability Noncumulative

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B [listing 2006 tax liens, water rights, items on a boundary survey, etc., *see* IER 378] or to which the Insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A [listing Borrower's mortgage], and the amount so paid shall be deemed a payment under this policy.

IER 374.

## III.    Parties' Arguments

Lenders argue that the district court erred because (1) section 9 of the policy does not define "payment" and, because the policies were drafted by Insurer, the word must be interpreted in Lenders' favor because their full-credit bid did not involve the payment of any money, and (2) the court's holding "is in direct conflict with the provisions of

Section 10 of the Policies" which make "clear that even if the insured releases its insured mortgage in exchange for title to the secured property, coverage under the policy **is *not* extinguished**; it is simply subject to being reduced by any **payments** the insurer may make on other excepted mortgages or prior, superior liens."

Insurer, on the other hand, argues that the district court "correctly concluded that by acquiring the Property by full credit bids, Equity effectively paid to itself the outstanding balance of the debt, as well as interest and the costs of foreclosure, in exchange for title to the property." Because Lenders were paid in full, Insurer argues, "Equity's full-credit bids at the trustee's sale reduced Equity's compensable damages under the title insurance policies to zero."

## IV.    Certified Questions and Further Proceedings

Based on the foregoing, we respectfully certify the following questions to the Arizona Supreme Court pursuant to Ariz. Rev. Stat. § 12-1862:

> 1. When a lender purchases property by full-credit bid at a trustee's sale, does Section 9 apply, or does Section 2 apply?
>
> 2. Is a full-credit bid at a trustee's sale a "payment" or "payment[] made" under sections 2 or 9 of the policies?
>
> 3. To what extent does a full-credit bid at a trustee's sale either (a) terminate coverage under section 2(a)(i) of the policies, or (b) reduce coverage under Section 2 and any possible liability under section 7?

Our framing of the questions is not intended to restrict the Arizona Supreme Court's consideration of these issues and the Court should reformulate the questions presented as it sees fit. *Amaker v. King Cty.*, 540 F.3d 1012, 1019 (9th Cir. 2008).

The Clerk of Court is hereby ordered to transmit forthwith to the Arizona Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, the original and six copies of this order; at the request of the Clerk of the Arizona Supreme Court, the Clerk of Court shall transmit copies of such portions of the record as the Arizona Supreme Court deems necessary to a determination of the certified questions.

Further proceedings in the Ninth Circuit are stayed pending the Court's decision on whether it will accept review, and if so, receipt of the answer to the certified questions. The case is withdrawn from submission until further order. The panel will resume control and jurisdiction over the case and the certified questions either when the Court answers the certified questions or declines to answer the questions. The parties shall file a joint report informing this court of the Arizona Supreme Court's decision to decline to answer, or, of its answers to the certified questions.

## V.  Counsel of Record

Counsel of record for Plaintiffs-Appellants are as follows:

Dennis I. Wilenchik
Tyler Quinn Swensen
Wilenchik & Bartness PC
2810 North Third Street, Suite 103

Phoenix, Arizona 85004
Phone number (602) 606-2810

Counsel of record for Defendants-Appellees are as follows:

Daniel E. Fredenberg
Fredenberg Beams
4747 N. 7th Street, Suite 402
Phoenix, Arizona 85014
Phone number (602) 595-9299

Patrick J. Davis
Nathaniel B. Rose
Fidelity National Law Group
2355 E. Camelback Road, Suite 900
Phoenix, Arizona 85016
Phone number (602) 889-8150

It is so **ORDERED**.

Johnnie B. Rawlinson
United States Circuit Judge, Presiding